Our first case is Sharp v. Cox, docket 25-1268. Good morning. May it please the court. My name is Everett Levy. I represent the appellant, Ms. Amy Sharp, in this bankruptcy matter. Ms. Sharp seeks the reversal of the bankruptcy court's judgment because it explicitly held that her statements about investments into her company led to false pretenses in the minds of the plaintiffs and therefore was non-dischargeable pursuant to the provision of the Bankruptcy Code 523A2A. The bankruptcy court erred in its legal conclusion for two reasons. The plain language of the statute, which states other than a... Can I ask you a little bit about preservation? Yes. I, looking at the record, don't see that you even hinted at a financial condition argument in front of the bankruptcy court. I don't believe it was, Your Honor, because it came out that this legal conclusion came out in the order. So it is the legal conclusion that was after trial. Now, I suppose that it should have been raised either as a halftime motion or at the close of all evidence as a matter of law, and it wasn't. But there was no way that trial counsel would have been able to determine the judge's thinking and the judge's order. So we're asking this court to review it de novo as a legal conclusion. Well, why would we review it de novo when it wasn't preserved? Because it's the bankruptcy's court opinion itself, order and holding, which is erroneous as issued. Can you cite us to what you're talking about in the bankruptcy court order, read that? Yes, you'll find it in the appendix, volume one, page 144. It is in the order. I still have it at volume one, page 144. Let me grab the order. I've got it right here. That would be page 16 of the bankruptcy court order. And what does it say exactly? Is the court simply reciting the statute, or did the court give it any attention as far as being an independent ground? Well, the court actually did cite the statute in its opinion in its entirety. And then at quite a degree of length went into false pretenses, went into fraud, but never, ever addressed the fact that these were financial statements. Then we're back to preservation, Judge McHugh's question, aren't we? Yes, it was not raised below. It was raised in the district court on appeal, and it was obviously raised now. Oh, maybe I misunderstood you. I thought you were saying the bankruptcy court had included that within its order and evaluated it in some fashion, which I didn't remember. Okay. Yeah, the bankruptcy court did not address the statements of financial condition at all. Because it wasn't asked to. Well, it was asked to interpret the statute. It interpreted the statute and applied a non-dischargeability question based on false pretenses, and it arrived at false pretenses based on financial statements. Well, but it considered the arguments that you made in the bankruptcy court about the statute. Well, there were no arguments about financial statements made in the bankruptcy court, and I have to concede that. However, once again, it's a matter of predicting how the bankruptcy court is going to rule and whether or not the bankruptcy court properly applied the statute and the case law from the United States Supreme Court in Lamar v. Appling. Well, so in front of this court, in response to the argument that this argument is waived, I don't see any citations to legal authority on the preservation issue at all. Why isn't it inadequately briefed in front of us? I don't have a good answer for you on that. My thought has always been that this matter is a de novo appeal of the bankruptcy judge's opinion, and therefore, the court should be able to look at it directly because it is a bankruptcy court judge, and that's the standard of review. And so your understanding is you can raise whatever new arguments you want to raise, and those will all be de novo review, even if they were never raised before the bankruptcy court. No, no, this is specifically reaching the heart of the judge's conclusion and the injustice that exists there. You know, if the judge had said, yes, I've looked at this and I considered this, I think that would be a different story. But here, the judge missed it entirely. There was no application of the statute, no analysis of whether or not these were financial statements at all. And that is just the plain reading of the statute, that it requires something other than a statement of financial condition. Did you just miss it, forget about it, or what's the explanation for now putting all of this on the district court and asking us to start over without the bankruptcy court's reasoning and consideration? That's unusual for us. Yeah, and again, this came up in the briefing at the district court level for the first time that the argument had been waived. And so from my position, like I said, it's like, well, this is an erroneous opinion that required de novo review. So wouldn't you have had to argue plain error? I believe the district court did look at it as plain error. Well, before us. Yes, I would. I would have had to argue it as plain error before you. But that's essentially implicit in the briefing, is that the bankruptcy court did in fact miss this statute in the case law. I know that we look at the bankruptcy court's analysis, but in terms of preservation and waiver, we have to consider that at the district court level. Isn't that right? Yes. And there, Judge Sweeney did in fact go ahead and proceed to do her analysis of the case using her discretion. But she recognized it hadn't been raised and said, nonetheless, I'm going to look at it. That's correct. We don't have to do that, do we? No, you don't. No, you don't. But we think that justice in this case requires the court to look at it and make a determination. Plus, as a policy matter, when Appling abrogated in Ray Jolson, which is the last time the Tenth Circuit looked at this particular bankruptcy provision of a statement of financial condition, that was in 2005. Appling came out in 2018. So it's an opportunity for the court to establish policy and to set a precedent in future cases as well in terms of how these statements of financial condition should be addressed. Let me ask. Can I? I'm going to go to the merits. To me, we've got a dichotomy, and we have to know which way to analyze it. If Sharpe's statements that she'd pay Cox and foresay when she got money, if that is simply a condition of the payment that I'm going to pay you, but here's the condition. I've got to get out of the money. Then I think the payments are not dischargeable because the Oral's promise to pay upon a condition of receiving. It was simply a condition. But if the statements are representations of her financial condition, I'm only going to pay you when I get money, because until I get money, I don't have the financial ability to pay you. Then it is dischargeable. I think both characteristics are fair characteristics of what happened here. One leads to one conclusion. The other leads to the other conclusion. How do we decide whether to consider that that statement, I'll pay you when I get money, is a condition of payment or is a representation of her financial inability to pay until she gets money? Well, it was very clear from the outset and the parties even acknowledged in their submissions to the Colorado Department of Labor, Ms. Forsey did, was that the plaintiffs would be paid when the company got investment. The language is clear. Right. We don't have any dispute about that. The question is, what test can you offer that would help us decide whether to consider that a representation of her financial inability to pay until she gets money or a contract agreement with a condition that I will pay you when I get money? How do we decide whether to consider that a financial representation or a condition of payment? I think it's going to require a totality of the circumstances view of those representations. If we look at the totality, what are the one or two things in this great totality that you want us to look at that would help guide us? It would be the financial condition of the person making the statement at the time. So in this case, it's clear that this business lost $400,000 over the course of its operations. But when she was losing money, she could have gone to the people she owed money to and said, OK, I'll pay you, but I want to enter into a new agreement with you. I'll make it a condition that when I get money, I'll pay you. That is a condition. And it would be dischargeable. But if she says, oh, I can't pay you until I get any money, my financial situation is such that I simply cannot afford to do it, then it would be dischargeable. So how do we decide whether it was a condition or a representation of her financial extremity? It was both. I think it was both, Your Honor. And so how do we decide? Because one leads one way, one leads the other way. Well, it's that two-step analysis that occurs. There has to be a determination under state law that there was a contract and that the person is liable for the contract. She probably made an oral contract to pay. There's not much focus on the attention. She probably had a written contract to pay as part of it as well. There were no written contracts. Everybody's assuming there's no written, so I'm a little surprised about that, but apparently that's everybody's assumption. So we treat it as oral. But is her statement, I'll pay you when I get money, is that a representation of her financial inability to pay until then? Or is it simply a contractual condition of when she will pay them? Well, I think the court did resolve that in Lamar v. Appling, where the debtor said, hey, I will pay you when I get my tax refund, and continued to represent that, took the tax refund, spent it somewhere else, and then yet continued to represent the expectation of the tax refund. And in Lamar, the court held that it was dischargeable because it was just a statement of financial condition. Obviously, there was a contract there. There was a promise to pay. There was a statement saying that I expect to have resources in the future to pay. And that was literally a false representation at the time. And then after that, it was a fraudulent representation. But in Lamar, they had a contract to pay, right? Yes. And so there was no dilemma. We had a written contract to pay. Here, we're dealing with transactions which themselves become the contract, apparently. Yes, well, I think the contract was the oral contract that I will pay you a salary if you work here, and you'll get paid when we receive investment funds. I don't want to take more of your time. Just one last sentence. Apparently, you don't have any test or help for us as to whether to consider this a condition or a representation of financial ability. And I don't have a useful test. I haven't really thought through it in that sense. It's a representation that forms a contract. I don't know if it's a contract condition or whether or not it's a representation that I will pay when we do it. Okay, thank you. I just don't have something. We'll see if the other – if the appellee has some suggestions for us. I'll reserve the remaining two minutes of my time if there are no further questions. Very well. Good morning. May it please the Court, David Lichtenstein, appearing for the appellees. Taking on the waiver point first, it's pretty clear that the appellant missed numerous opportunities to raise this below. There was a pretrial statement in which the court directed the parties to lay out all of the legal points that would be at issue at trial. At the same time, the appellant filed an extensive trial brief, which appears in the appendix at – looks like it's Volume I, starting at page 15. It was not raised in an opening statement, closing statement at trial, and even at the district court level, the district court found the appellant's argument to be cursory. So it was really only fully developed. I wouldn't even say fully developed in this court for the first time, and it was really only slightly less cursory. The point of the waiver principle, though, is that the plaintiffs shouldn't be penalized for not having raised the issue at the trial level. Ms. Sharpe responds that the bankruptcy court's judgment necessarily involved consideration of Ms. Sharpe's statements, but this misses the point of waiver because it's a procedural concept. Ms. Sharpe says in a single sentence on page 2 of their reply brief that factual development – no additional factual development was needed. But in fact, that concedes there was some factual development. So by not raising it below, Ms. Sharpe deprived the plaintiffs of the opportunity to further develop the record. So the concept of waiver – I'm sorry, the concept of the exception to the non-dischargeability rule inherently implicates the scope of the exception, and it's not enough to be inherent. The court declined to – I'm sorry, in the Rex Moore Silver case cited in our answer brief at page 4, the court expressly declined to review material that was not specifically raised below. Well, the district court here basically said this wasn't raised, but in the interest of completeness. Right. I'm going to go ahead and deal with this argument. Does that in any way dictate to us whether we treat it as waived? No, because again, we're up here on de novo review. Well, are we – if we review it, if we say it's not waived, and we do review it, are we on plain error or are we on de novo? Well, I would say you're reviewing it on a plain error basis. I mean, you're reviewing – If we review it at all? Yes, if you review it. You're reviewing the district court's opinion on a de novo basis, but as below with the district court, this court should be looking at plain error. Okay, so one of the – Judge Ebel touched on this, but we've got written emails that seem to be making the same promises that the district court found and the bankruptcy court found were fraudulent. Why doesn't that – even if it didn't fall under subsection A, wouldn't it be non-dischargeable under subsection B? Well, the issue on that under either subsection is going to be what does it mean to have obtained services by statements respecting Ms. Sharpe's financial condition. There were some written statements, but there were some non-written statements and conduct by Ms. Sharpe, and I think specifically that the bankruptcy court cited at least three of those. One of them was blocking access to her and her company's books and records. There was a fraudulent conveyance scheme that I hope to go into briefly, and there was the fact that she concealed the fact that investments had come in, but – Well, let me – Or had not come in, rather. I don't think – I think we're talking across each other. Looking at the statute, you've got the exception for a statement respecting the debtor's or insider's financial condition in subsection A. Correct. But that same exception doesn't apply in B, does it? I don't know that off the top of my head because I'm focusing, and I think the bankruptcy court focused on the oral, the non-written statements above all. Well, if it's a plain error review, we have to see if it affected substantial rights, and if it would have been non-dischargeable under B anyway, it's hard to say it affected substantial rights, isn't it? Well, I don't know how hard it is to say that, and when we look at plain error review, we're talking about whether the bankruptcy court could have gone either way on the facts presented before it, and the bankruptcy court came down in one direction on that and said there were sufficient facts to find that these were fraudulent statements, that they were made with false pretenses, false representations, or actual fraud. So, you know, the central issue is going to be under A because, yes, there were some written statements, but I don't think the bankruptcy court looked at those statements in particular and said those were the misrepresentations. And you're not arguing, I mean, really it had not been argued as a written statement fraud, isn't that correct? Correct. And, of course, these are mutually exclusive under Tenth Circuit and other authority, but the bankruptcy court heavily relied on the non-written conduct. With respect to the bankruptcy court's finding that these were fraudulent statements that did not implicate the financial condition and therefore were non-dischargeable, would that require a challenge by Ms. Sharp that it had to be clearly erroneous? Yes. But, again, I think implicate is, with all due respect, I think it may be the wrong word. The question is under the Section A is whether the services that the plaintiffs provided were obtained by statements of financial condition. Well, the district court looking at this concluded that they were. Well, the bankruptcy court concluded that they were, right? Well, yes, among other things. The bankruptcy court also cited other conduct. Unlike the Lamar case in which essentially the entire statement that misled the creditor, here, again, we have the concealment of information about the financial condition. We even have a fraudulent conveyance situation. And I think that goes to Judge Ebell's point because after the plaintiffs had separated from employment, Ms. Sharp and her companies indeed did receive fairly large investments, and Ms. Sharp concealed those from the plaintiffs by not disclosing those at all. So I think whether it's a, you know, contractual condition or even a representation, I think, again, the fact that other conduct is what misled the plaintiffs makes it non-dischargeable debt in either event. Can I ask you a question on Lamar since we're kind of talking about merits? Yeah, please. And on this respecting language from the 523A2A that leads us into our dispute, it says, we also agree, this is a majority opinion, we also agree that a statement is respecting a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. How does it not here, the statements that were made have a direct relation to or impact on debtor's overall financial status? Well, there's two parts of that phrasing that we need to pick out. First of all, there's direct relationship, and Ms. Sharp did not give them financial statements or anything like that. It doesn't say that. Well, no. I mean, we have to draw a distinction between direct and indirect. And essentially by concealing statements of, you know, access to books, for example, concealing the fact that money comes in after they're separated, both of those are, you know, not direct compared to a statement as Lamar made, the debtor in Lamar made, where it was a single representation about a receivable, a truly large receivable, and one that the creditor really had the ability to look behind for themselves. Well, let me ask it this way then. This language, direct relation, and we'll chop it, we'll talk about that one first. Direct relation to the debtor's overall financial status. And in Lamar, the court said that the statement, I'll give you my $100,000 income tax refund when I get it, which turned out to be only $60,000 and didn't give it. Right. That that was a statement that had a direct relation to the debtor's overall financial status. Namely, I don't have any now, but I will. And that's kind of what we have here, too. I don't have any now, but I will, and when I do, I'll pay you. It seems like they're running parallel. Tell me why not. Well, again, the state, the thing that the plaintiffs relied on here was not about the overall financial condition, but it was about the candor that Ms. Sharp expressed with the plaintiffs. So she's not saying, look, you know, I have X dollars and it turns out I have Y dollars. What she's saying is you can't even look. So there's a pattern going on here, a pattern of concealment that if the plaintiffs had been able to look behind that, they may not have kept working for another year. So it's really about an asymmetry, not just of information, but of access to information, compared to Lamar, where the creditor of the law firm could very easily have looked into the overall financial condition just by demanding tax returns, for example, from the debtor. Well, there wasn't a dispute. He didn't have any money. It wasn't a misrepresentation. He actually had Swiss bank accounts. He had no money, like here, like here. Right. Well, again, Ms. Sharp didn't say, hey, I have no money. She said, you can't look at my books. And after the fact, she didn't tell the plaintiffs, hey, I got a bunch of money. And, again, during their employment, she didn't say, okay, all these investments I said were going to come in didn't come in. So these are not about overall financial conditions. It's about information. Judge McHugh, it looks like you had a question here. No? Okay. Well, I will, if there are no other questions, I'm going to reserve my time so that we can break early. All right. Thank you, counsel. Counsel, sir. Thank you. I do have a brief rebuttal on three points, and they're just sequential. In the reply brief, when we said that there's no needed factual development, we're saying that everything before the court is possible to make a decision. However, I think Judge McHugh raised the 523A2B question, which talks about these statements being in writing. And we certainly can see that there were some e-mails and some text messages that were in writing. However, this case was brought only under 523A2A and a breach of contract wages claim. And that's front page of Judge Romero's order on page one. But still for prong three, wouldn't we look at B? We're trying to determine whether it mattered or not. You certainly would, Your Honor. And the issue would be, though, as is discussed in Lamar, is there's a different set of elements that are required to be addressed. And those weren't addressed at the bankruptcy court level. And I think then, you know, if the court were to consider the B prong, that remand might be an appropriate thing to do here to give Ms. Sharp a chance to address all those elements. Well, you can't meet prong four either, can you? I mean, we've said that it's almost impossible for a civil appellant to meet the prong four requirement because it goes really to the deprivation of liberty. Yes. So, I mean, if we're under plain error, I think you've got a problem with prongs three and four. How do you respond to prong four? Well, again, I don't think we're under plain error. I think we're under de novo. And that's the real answer here is that. So, in your view, we remain under de novo review even if there are arguments that were not properly raised below? Yes. Yes, because the court is looking at the bankruptcy court. Do you have any authority for that? You don't cite a single case for that. In fact, you know, your brief doesn't even comply with our rule that you have to cite the places in the record where an argument was raised. I mean, we could refuse to hear it on that alone. Well, I do believe I cited the record where points were raised, and I apologize if it wasn't. The factors that are here, though, is that this really, the appellate review level is de novo of the bankruptcy court. Always, even for new arguments never made to the bankruptcy court. Yes, that's my position, and that's my suggestion. And do you have any authority for that that you could provide to us? I don't. I'd be happy to supplementally brief it if the court would like and develop additional argument along those lines. And if I could just address in my last 42 seconds. You're over time, but I'll let you wrap up in 15 seconds if you can do it. The concealment argument that my opposing counsel just made, the omissions, well, first of all, those are related to statements of financial condition. And second, I think that only goes to the element of whether or not the plaintiff's reasonably relied. We don't get there unless there's a finding that there was a false pretense. We can't get to the false pretense because they were statements of financial condition. All right. Thank you, counsel, for your arguments. The case is submitted. Counsel are excused.